'X'AEEEN, P.
The first question presented in this case, arises on the third bill of exceptions taken by the plaintiff in error at the trial. From that it appears that certain certificates, purporting to be signed by J. E. Heath, auditor, were permitted to go in evidence to the jury, without proof of their execution, or of the official character of J. E. Heath, as tending to prove that the tract of one thousand four hundred acres was delinquent for the 3rears and the amount therein set forth, and that the same had not been paid at the date thereof. The act of April 1, .1831, Sup. R. C. p. 348, § 7, makes such certificates evidence of the delinquency and forfeiture as against the parties therein named. And *793 the act of March 15, 1838, Sess. Acts, p. 16, | 7, makes it the duty of the auditor to cause to be made out a list of everj' tract of land in the counties west of the Alleghany mountains, forfeited to or vested in the Literary fund for the non-payment of taxes charged thereon, and which shall not have been redeemed; and to transmit such lists to the commissioner for the sale of delinquent lands.
It being thus made the duty of the auditor to make out and furnish said lists and certificates in his official character, his attestation of the certificate in the usual mode of certifying official copies of documents under his control, must be deemed sufficient evidence of the execution of such document, and of the official character of the officer; as much so as the attestation of a clerk to an official copy from his office, is deemed and taken as evidence of the execution of the paper, and of the character of the officer, in the absence of any suggestion to the contrary. Upon general principles, and without reference to any particular statute, the certificate of the auditor of a fact appearing from the books under his control, and upon whom the law imposes the duty of examining such books, and giving a certificate of the facts thereby appearing, as a guide *for other officers in the performance of duties imposed on them, would be competent as evidence of such fact. Baker v. Preston, Gilm. 235. And there being no particular mode of authentication or seal of office prescribed, the signature of the.officer in his official character must prove itself and authenticate the instrument. In Taylor v. Burdett, 11 Leigh 334, it was decided, that as in case of sickness or absence of the auditor, the chief clerk in the office is required to perform the duties of the office, a certificate being signed by an individual as chief clerk and acting auditor, it must be presumed he was acting by reason of the sickness or absence of his principal. No objection seems to have been made to the certificate for want of authentication or proof of execution, nor does it appear that any such prooE was offered. The question arose upon a motion to exclude from the jury the patent of the plaintiff, under the 17th section of the act of 1830-31, before referred to, until the plaintiff should show that he had his lauds duly entered and charged with taxes, and had paid the same. The court was to determine the fact before admitting the patent to be read in evidence to the jury; and as it could only ascertain the fact by legal evidence, the question of the admissibility of such certificate without further proof of authentication, arose as soon as it was offered to satisfy the court of this preliminary fact.
By the Code of Virginia, ch. 176, § 4, p. 660, it is enacted that the certificate of the first auditor of the fact and time of the return of any real estate as delinquent, shall be prima facie evidence of what is stated in such certificate; and such certificate sealed, or sealed and signed, or signed alone, shall be admitted as evidence without any proof of the seal or signature, or of the official character of the person whose name is signed to it. The act of March 31, 1851, Sess. Acts, p. 33, $ 13, extends the provision to the -‘‘auditor’s certificate of the payment or non-payment at any time of taxes on forfeited or delinquent lands, &c., but does not alter or affect the section of the Code as to the effect and admissibility of the certificate of the auditor of the fact and time of the return of any real estate as delinquent. That is the character of the certificates here, and the proof of the signature and official character of the officer is dispensed with. The provision, though enacted since the date of the certificate, is general, and permits a certificate to be admitted in evidence whenever offered without proof of execution or of the official character of the officer. Such provision, though retrospective, is not objectionable ; it violates no right, and makes no change in the evidence of the fact affecting the right. The fact of delinquency, as appearing on the books in the auditor’s office, creates the forfeiture ; the official certificate is by law made evidence of the fact; and how that is to be authenticated is mere matter of practice, which may be regarded as may be most convenient in prescribing proceedings in court.
After the evidence was concluded, the defendant’s counsel moved the court to instruct the jury, that taking the evidence of the plaintiff to prove all that it tended to prove, yet that the evidence so offered on behalf of the plaintiff's, when considered in connection with the evidence offered by the defendant, does not prove and is not such a subsisting valid and legal title as entitled the plaintiffs to recover in this action. Grave objections might be alleged against such a course of proceeding. The court is asked to substitute itself to the place of the jury; to exercise the functions of the jury in determining upon the weight and credit of the testimony, and deducing from it all such proper inferences as the jury might have deduced. I should not have deemed it erroneous, if the court had dec'ined to give such an instruction, and *bad put the party to his demurrer to the evidence. The instruction however was given; the evidence is set out in the bill of exceptions; and as there is no conflict in the testimony, no injustice can be done to the plaintiff in error by viewing the testimony, as if there had been a demurrer to the evidence, giving to them the benefit of all proper inferences and presumptions, and disregarding any conflicting testimony offered by the defendant in error.
The first question that arises upon the evidence so certified, relates to the forfeiture of the lands claimed by the plaintiffs, for the non-payment of taxes charged thereon.
A grant issued to Thomas Usher, jr., and Abraham Usher on the 24th of July 1788, of one thousand four hundred acres of land, which it was admitted embraced the land *794 in controversy; and it was further admitted, that the lessors of the plaintiff are the heirs of the said patentees. It appeared that the land had not been entered on the commissioner’s books for Wood county from 1800 to 1817, both inclusive, in the names of the patentees, or their heirs, or of any person claiming: under them. The first entry on the books of the commissioner of the revenue for said county, was made in the names of the patentees in the year 1818; and the heirs of said patentees had not hitherto caused said lands to be entered on said books in their names. It appears from the certificates of the auditor that no payment had been made in the redemption of said land since 1818, and that the land was returned as delinquent for the taxes charged thereon from 1819 to 1831, inclusive, and for the years 1833, 1836 and 1837.
By the act of April 1st, 1831, Sup. R. C. p. 34S, 'i 2, lands returned delinquent for 1820 or any previous year, if not redeemed before the 1st of January 1832, were forfeited; and lands returned delinquent for any' *year subsequent to 1820 and previous to 1831, were forfeited if not redeemed before the 1st of November 1833.
By the acts of December 16, 1831, and of March 10th, 1832, further time for redemption upon all such lands was given until the 1st of April 1834. The period for redemption was extended by the act of March 11, 1834, to-the 1st of October 1834. The act of Febuary 27, 183S, § 1, gave further time, until the 1st of July 1836, for the redemption of such lands returned delinquent, and which became vested in the Literary fund on the 1st of October 1834. The act of March 30, 1837, extended the time for the redemption of such forfeited lands until the ISth January 1838; and the act of March IS, 1838, extended the time to the 1st day of July 1838, when the period for redemption expired. The forfeiture of such lands returned as delinquent became complete on the 1st of October 1834. The subsequent acts treated them not as lands returned as delinquent merely, but as lands forfeited; and although further time to redeem was given, the forfeitures which had accrued by prior laws were not released, except in such cases where the owner availed himself of the privilege to redeem. Staats v. Board, 10 Gratt. 400. The land in question, therefore, never having been redeemed, became actually forfeited and vested in the Literary fund on the 1st of October 1834.
The proof certified shows that the pat-entees were dead when the land was entered in their names in the year 1818. It is unnecessary to consider whether under the act, 2 Rev. Code of 1819, p. IS, § 13, 16 and 30, this was not the regular eourse until the heirs caused a transfer to be made on the commissioner’s books to their names, according to law. More especially, as it seems that payment in redemption of said lands for the taxes prior to 1818, had been made in the names of the patentees. But be this as it may, either the lands were properly entered, and being returned delinquent, | were forfeited for the non-payment *of taxes, vesting in the Literary fund such estate as was vested in the person in whose name it was returned deliur quent, and in the heirs, . devisees or purchasers claiming under such person at the time such land were forfeited according to the act of April 1, 1831, Sup. R. C. p. 346, ¿4; or if not properly entered, then they became forfeited for failure to enter according to the act of February 27, 1835, $ 2; which forfeiture became absolute by the failure to redeem before the 1st of November 1836, according, to the act of March 23, 1836, as no actual possession of the owner or proprietor or of his tenant is shown to have existed on the 27th February 1835, the time of the passage of the act. And it further sufficiently appears, that the amount of taxes, exclusive of damages, exceeded the sum which was relinquished by the act of 1832 or subsequent laws, if any such en-quiry could be raised until the lands were actually entered on the books of the commissioner of the revenue, and the amount ascertained. I think, however, the entry in the name of the patentees concludes the heirs and purchasers claiming under them, and they were forfeited for the delinquency in failing to pay the taxes charged thereon. But the result is the same under any aspect of the case as presented by the facts certified.
The defendant showed no title in himself; and it has been insisted, that according to the cases of Middleton v. Johns, 4 Gratt. 139, and Tapscott v. Cobbs, 11 Gratt. 172, the defendant showing no title, should not be permitted to set up an outstanding title to prove that the plaintiff has no title.
The testimony in the case shows acts of possession at different times by some of the plaintiffs, and by their agent and tenants. The last act of possession proved is, that one of the lessors of the plaintiff about the 1st of June 1835 moved from the east to the county, of Wood, and settled upon the one thousand four hundred acre tract, remained until February 1836, *when he left the land; and that he claimed the land as the Usher land ; that the place where he so settled was a different portion of the one thousand four hundred acre tract, from that in controversy; and that the improvement where he settled was afterwards held by a third person adversely to the plaintiffs’ title.
It does not appear that there was any privitj’ between the .lessors of the plaintiff and the defendant, or that there was any obtrusion on the actual possession of the plaintiffs in error. The land being forfeited and actually vested in the Literary fund, the possession of the plaintiffs after such forfeiture gave them no rights as against the commonwealth. For any thing that appears, the possession was abandoned in February 1836. It does not appear when or how the defendant entered. But being in possession, and nothing more appearing, he may retain it, and cannot be deprived of the enjoyment of the property by one *795 who is proved not to have any right to the land in controversy. It appears from the Code, p. 560, note to 14, that a proposition of the revisors to change the rule which permitted a defendant in possession to defeat a recover}' by showing an older title than that of the plaintiffs in a third party under whom the defendant does not claim, was rejected by the legislature. The case under consideration must be governed by the general rule as recognized in Moody v. McKim, 5 Munf. 374, and the recent case of Atkins v. Lewis, 14 Gratt. 30, there being no proof to bring it within the exception acted upon in Middleton v. Johns, 4 Gratt. 129, and Tapscott v. Cobbs, 11 Gratt. 172.
I think the judgment should be affirmed.
The other judges concurred in the opinion of Allen, P.
Judgment affirmed.